MATTER OF G—

In VISA PETITION Proceedings

A-12201461

*Decided by Board December 5, 1961*

Legitimacy—Hungary—Child born out of wedlock.

Child born out of wedlock in Hungary on May 11, 1953, whose paternity was acknowledged at time birth was recorded is held eligible for third preference quota status as "legitimate" child of natural father. Under laws which became effective on June 1, 1947, and January 1, 1953, Hungary has abolished the distinction between legitimate and illegitimate children, giving all children, whether born in or out of wedlock, coequal status.

## BEFORE THE BOARD

DISCUSSION: The case comes forward on appeal from the order of the Acting District Director, Chicago District, dated June 8, 1961, denying the visa petition to classify the status of the beneficiary for the reason that it has not been established that the beneficiary is the petitioner's son or that the petitioner is his parent as defined by sections 101(b)(1) and 101(b)(2) of the Immigration and Nationality Act of 1952, as amended.

The petitioner, a native of Hungary, a citizen of Italy, 33 years old, male, is a lawful permanent resident alien, having been admitted for permanent residence at the port of New York on February 18, 1959. He seeks preference status under section 203(a)(3) of the Immigration and Nationality Act on behalf of the beneficiary, a native of Hungary and a citizen of Italy, eight years old, male. The petitioner states that the beneficiary is his natural son, born out of wedlock, and that the mother's name was E—E—. The petitioner avers that under the law in Hungary the registrar does not distinguish between legitimate and illegitimate children and that the last name of the mother shown on the birth certificate merely indicates that the mother was not married to him. At oral argument, the petitioner stated that he reported the birth of his son, the beneficiary, to the registrar personally and admitted fatherhood by this official declaration (the birth certificate shows the name of the child as N—G—, the father's name as F—G—, the mother as E—E—) ; that by this declaration he legitimated his child according to the Western

518

noncommunist concept of family law; that this was the only way for him to obtain for his son legitimation in his family name; and that the child was legitimated after birth and derived the petitioner's Italian citizenship because of his legitimation. Neither the petitioner nor his representative has submitted any provisions of Hungarian law to establish the alleged legitimation.

Section 101(b)(1)(C) defines the term "child" to mean an unmarried person under 21 years of age who is a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in or outside the United States, if such legitimation takes place before the child reaches the age of 18 years and the child is in the legal custody of the legitimating parent or parents at the time of such legitimation. We are, therefore, permitted to look at the law of Hungary to determine whether the child has been legitimated under the law of that country and we are not confined to legitimation under the laws of the various states of the United States. *Matter of K—W—S—*, 9—396 (Atty. Gen., Aug. 7, 1961).

The Foreign Law Section of the Library of Congress has published a memorandum regarding the legal status of children born out of wedlock in Hungary.[1] The law 1946:XXIX, effective as of June 1, 1947 [Decree 30,000/1947 (V.25)I.M.], abolished the distinction between legitimacy and illegitimacy (sec. 1) and provided the same status for children born out of wedlock as children enjoy who were born of parents legally married. As a result of this law, beginning with June 1, 1947, Hungarian law does not recognize the term legitimate and illegitimate children any more, but only children born in or out of wedlock. Moreover, the child born out of wedlock is in family relation to his mother and her relatives, as well as to his father and his relatives; under this family relationship the child born out of wedlock (and his relatives) enjoys rights and has to fulfill obligations *inter vivos* and *mortis causa* (except as otherwise provided by law as, *e.g.*, custody, paternal power, support) as if he had been born in wedlock of parents legally married (sec. 19). Consequently, the child born out of wedlock inherits from his father as his heir *ab intestato*, and carries his father's last name (sec. 23). Law 1946:XXIX made his status equal to that of a child born of legally married persons and, providing for the ascertainment of the father, paternal acknowledgment, *et cetera*, assured the materialization of this equal status. This law, however, still kept—even if only in the terminology—the concept of the child born out of wedlock. The new code on domestic relations, Law 1952:IV, removed even this last discriminative mark by dispensing with the

---

[1] *Legal Status of Children Born Out of Wedlock in Hungary* by Dr. Alexander K. Bedo (1956).

terms of being born in or out of wedlock. Therefore, since January 1, 1953, when the code on domestic relations became effective, there are no legitimate or illegitimate children in Hungary any more, only children of equal status.[2]

In the instant case, the beneficiary was born on May 11, 1953, in Hungary, and the birth certificate filed in the Register of Births on August 17, 1953, contains the father's name as well as the mother's name. It is apparent, therefore, that the natural father acknowledged his child at the time the birth was recorded. The child, therefore, satisfies the requirements of legitimation under Hungarian law and also satisfies the immigration requirements for legitimation under section 101(b)(1)(C) of the Immigration and Nationality Act. The visa petition will accordingly be approved for third preference status on behalf of the beneficiary as the legitimated child of the petitioner, a permanent resident alien.

**ORDER:** It is ordered that the appeal be sustained and that the visa petition be approved for preference status under section 203 (a)(3) of the Immigration and Nationality Act on behalf of the beneficiary.

---

[2] See *Matter of K—*, 8—73, concerning the similar status of children born out of wedlock and acknowledged by the father under Polish law.