MATTER OF CLAHAR

In Visa Petition Proceedings

A–22160970

*Decided by Board April 7, 1978*

(1) In order to support a claimed "brother/sister" relationship under section 203(a)(5) of the Immigration and Nationality Act, 8 U.S.C. 1153(a)(5), a petitioner has to establish that both he and the beneficiary once qualified as "children" of a common "parent" within the meaning of section 101(b)(1) and (2) of the Act.

(2) A petitioner and beneficiary who were not born in wedlock cannot qualify as the legitimate children of their natural father within the meaning of section 101(b)(1)(A), 8 U.S.C. 1101(a)(1)(A).

(3) Under the Legitimation Act of Jamaica, a child born before the marriage of his parents is considered their legitimate child from the date of the marriage and is entitled to all rights of a legitimate child.

(4) Under the Status of Children Act of Jamaica, an act of acknowledgment of paternity without the marriage of the natural parents, does not establish coextensive rights with children who were born in wedlock or children who were legitimated by the marriage of their natural parents; and, hence, an acknowledged child in Jamaica cannot be equated with a legitimate or legitimated child for immigration purposes.

(5) A beneficiary who does not qualify as either a legitimate child under section 101(b)(1)(A) or as a legitimated child under section 101(b)(1)(C) of the Immigration and Nationality Act, is ineligible for immigration benefits under section 203(a)(5) of the Act.

ON BEHALF OF PETITIONER:
Pro se

ON BEHALF OF SERVICE:
George Indelicato
Appellate Trial Attorney

BY: Milhollan, Chairman; Maniatis, Appleman, Maguire, and Farb, Board Members

The United States citizen petitioner applied for preference classification for the beneficiary as his sister under section 203(a)(5) of the Immigration and Nationality Act. In a decision dated May 6, 1977, the District Director denied that petition. The petitioner has appealed from that denial. The appeal will be dismissed.

The petitioner is a 34-year-old married male who is a native of Jamaica and a naturalized citizen of the United States. The beneficiary is a 21-year-old single female alien who is a native and citizen of Jamaica.

The District Director predicated his denial of the visa petition upon a

finding that the beneficiary was illegitimate at birth and that the record fails to show that she was legitimated by the marriage of her natural parents or otherwise legitimated.

In a letter submitted in connection with his visa petition, the petitioner informed the Immigration and Naturalization Service that he and the beneficiary have a common natural father; that they were born of different mothers; and that neither of the mothers married their father. The petitioner enclosed with his letter a copy of his birth certificate and a copy of the beneficiary's birth certificate. The petitioner's birth certificate lists the mother's name as Jane Bennett. No name was listed for the father. In the beneficiary's birth certificate, the mother's name is listed as Gertrude Pinnock. No name was listed under the category of father.

On appeal, the petitioner indicates that he and the beneficiary are related as brother and sister; that they were born out of wedlock; and that in Jamaica the practice of parents having children out of wedlock is customary and socially acceptable. At oral argument, the petitioner alluded to a change in Jamaican law which he believed had a bearing on his visa petition. The petitioner was given an opportunity to furnish this Board with information concerning Jamaican law. In a letter addressed to this Board dated July 29, 1977, the petitioner stated that ". . . marriage of the parents of children born out of wedlock in Jamaica is no longer the criterion for children to be accepted as legitimate." In support of that statement, he submitted a document which purports to be a copy of the text of a statute which pertains to the status of children in Jamaica. The petitioner's letter and the enclosure to that letter are made a part of the record of these proceedings.

In visa petition cases, the petitioner bears the burden to establish eligibility. *Matter of Brantigan,* 11 I. & N. Dec. 493, 495 (BIA 1966). In order to support the claimed "brother/sister" relationship under section 203(a)(5) of the Immigration and Nationality Act, the petitioner has to establish that both he and the beneficiary once qualified as "children" of a common "parent" within the meaning of sections 101(b)(1) and (2) of the Act. *Matter of Gur,* Interim Decision 2460 (BIA 1977); *Matter of Rehman,* Interim Decision 2450 (BIA 1975); *Matter of Garner,* Interim Decision 2357 (BIA 1975); *Matter of Hueng.* Interim Decision 2334 (BIA 1974).

The only subdivisions of section 101(b)(1) which may possibly be relevant to this case are (A) and (C), which provide:

The term "child" means an unmarried person under twenty-one years of age who is—

(A) a legitimate child; or

. . . .

(C) a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in or outside the United States, if

485

such legitimation takes place before the child reaches the age of eighteen years and the child is in the legal custody of the legitimating parent or parents at the time of such legitimation.

The term "legitimate" as used in section 101(b)(1)(A) refers solely to a child born in wedlock. See *Matter of James*, Interim Decision 2461 (BIA 1975); *Matter of Dela Rosa*, 14 I. & N. Dec. 728 (BIA 1974); *Matter of Kubicka*, 14 I. & N. Dec. 303 (BIA 1972).

In light of the representations made on appeal concerning legitimation, we have examined the laws of Jamaica in order to ascertain the current legal status of children in that country and to determine how these laws may affect the visa petition under consideration in this case. Previously we held that the law governing legitimation in Jamaica is found in the Legitimation Act of Jamaica, II Jamaica Laws, c. 217 (rev. ed. 1953), as amended by the 1961 Jamaica Laws, No. 18. That statute provides that a child born before the marriage of his parents shall be considered their legitimate child from the date of the marriage and shall be entitled to all the rights of a legitimate child. See *Matter of Gilpin*, Interim Decision 2503 (BIA 1976).

We note that on October 19, 1976, the Status of Children Act, 1976, was enacted in Jamaica. The expressed intention of this legislation is to remove the legal disabilities of children born out of wedlock. It is clear from studying the text of Section 3 [1] of the Status of Children Act that the drafters intended to establish equal status under the laws of Jamaica for children born in or out of wedlock. However, it is equally clear that the Act does, in fact, provide for various enumerated exceptions to this general proposition of law. Upon examination of the statute, we find that any previous rule of Jamaican law relating to the domicile or

---

[1] Section 3 of the Status of Children Act, 1976, of Jamaica provides that:

(1) Subject to subsection (4) and to the provisions of sections 4 and 7, for all the purposes of the law of Jamaica the relationship between every person and his father and mother shall be determined irrespective of whether the father and mother are or have been married to each other, and all other relationships shall be determined accordingly.

(2) The rule of construction whereby in any instrument words of relationship signify only legitimate relationship in the absence of a contrary expression of intention is hereby abolished.

(3) Subject to subsection (4), this section shall apply in respect of every person, whether born before or after the commencement of this Act, and whether born in Jamaica or not, and whether or not his father or mother has ever been domiciled in Jamaica.

(4) Nothing in this section shall affect or limit in any way rule of law relating to—
(a) the domicile of any person;
(b) the citizenship of any person;
(c) the provisions of the Children (Adoption of) Act which determine the relationship to any other person or a person who has been adopted;
(d) the construction of the word "heir" or of any expression which is used to create an entailed interest in real or personal property.

citizenship of any person is not affected or limited in any way by the Status of Children Act. Also, the previous provisions of the Jamaican Adoption of Children Act governs the legal relationship of parties to an adoption notwithstanding the provisions of the Status of Children Act. Further, with respect to the construction of the word "heir" or the construction of any expression which is used to create an interest in real or personal property, the provisions pertaining to the equal status of children under the Act in question are not applicable. Additionally, we construe the provisions of subsection (3) of Section 3 of the Status of Children Act to mean that as to the legal aspects of domicile, citizenship, adoption, and the construction of words used to create real and personal property interests, the statute has no retroactive effect for children born *before* the effective date of the Status of Children Act.

Further, we find that the transitional provisions relating to wills and other instruments and intestacies do not apply to dispositions made before the date of the commencement of the Status of Children Act. Dispositions, as defined by that statute, include oral or written dispositions involving real or personal property, special powers of appointment, intestate distribution and dispositions by *inter vivos* instruments, wills, and codicils executed before the date of commencement of the Status of Children Act.[2]

In addition to the above described limitations, there exists still another limitation embodied in Section 7 [3] of the Status of Children Act. That section provides, in pertinent part, that if a father/child relation-

---

[2] Section 4 of the Status of Children Act, 1976, of Jamaica provides that:

(1) All dispositions made before the commencement of this Act shall be governed by the enactments and rules of law which would have applied to them if this Act had not been passed.

(2) Where any disposition to which subsection (1) applies creates a special power of appointment, nothing in this Act shall extend the class of person in whose favour the appointment may be made, or cause the exercise of the power to be construed so as to include any person who is not a member of that class.

(3) The estates of all persons who have died intestate as to the whole or any part thereof before the commencement of this Act shall be distributed in accordance with enactments and rules of law would have applied to them if this Act had not been passed.

(4) In this section "disposition" means a disposition, including an oral disposition, of real or personal property whether *inter vivos* or by will or codicil; and notwithstanding any rule of law, a disposition made by will or codicil executed before the date of commencement of this Act shall, notwithstanding the provisions of section 29 of the Wills Act, not be treated for the purposes of this section as made on or after that date by reason only that the will or codicil is confirmed by a codicil executed on or after that date.

[3] Section 7 of the Status of Children Act, 1976, of Jamaica provides that:

(1) The relationship of father and child, and any other relationship traced in any degree through that relationship shall, for any purpose related to succession to property or to the construction of any will or other testamentary disposition or of any instrument creating a trust, be recognized only if—

487

ship is not recognized by a father at the time a child is born, but is recognized at a later date, the legal effect of that recognition under the Act will not affect any estate, right, or interest in property to, which any person has become absolutely entitled prior to the date of that recognition.

We construe this section to mean that a belated acknowledgment of paternity of a child born out of wedlock will not retroactively affect property rights which accrued prior to that acknowledgment.

In his appeal, the petitioner suggests that the legitimation of a child born out of wedlock may be achieved under Jamaican law without the subsequent marriage of the natural parents of that child. The Legitimation Act of Jamaica requires the marriage of the natural parents of a child born out of wedlock in order for that child to be entitled to all the rights of a legitimate child. We do not find any evidence in the Status of Children Act, 1976, to indicate that the Legitimation Act of Jamaica has been abolished, repealed, or annulled. In this connection, the schedule of amended coexisting Jamaican statutes which is appended to the text of the Status of Children Act does not reflect the amendment or revocation of any of the provisions of the Legitimation Act of Jamaica.

Our analysis of the Status of Children Act leads us to the conclusion that it is not a statute which treats all children born in Jamaica as legitimate at birth. It is also not a statute which eliminates or modifies the preexisting legal procedures for effecting legitimation in Jamaica. While it is evident that the statute has the effect of deleting references to the term "illegitimate" in Jamaican law and substituting in its place the expression "born out of wedlock," the fact remains that under Jamaican law there are significant legal distinctions between children born in wedlock and children born out of wedlock. These distinctions affect not only the legal status of a child with respect to domicile, citizenship, and adoption, but affect his interest and rights to property as it relates to *inter vivos* and testamentary dispositions and intestate distributions. Although a child born out of wedlock in Jamaica may be

---

(a) the father and the mother of the child were married to each other at the time of its conception or at some subsequent time; or

(b) paternity has been admitted by or established during the lifetime of the father (whether by one or more of the types of evidence specified by section 8 or otherwise):

Provided that, if the purpose aforesaid is for the benefit of the father, there shall be the additional requirement that paternity has been so admitted or established during the lifetime of the child or prior to its birth.

(2) In any case where by reasons of subsection (1) the relationship of father and child is not recognized for certain purposes at the time the child is born, the occurrence of any act, event, or conduct which enables the relationship, and any other relationship traced in any degree through it, to be recognized shall not affect any estate, right, or interest in any real or personal property to which any person has become absolutely entitled, whether beneficially or otherwise, before the act, event, or conduct occurred.

488

recognized by his natural parents in various formal ways under the Status of Children Act, the act of recognition does not establish coextensive rights with children who were born in wedlock or children who were legitimated by the marriage of their natural parents.

The Jamaican law applicable to this case is clearly distinguishable from Article 15 of the Marriage Law of the People's Republic of China which states that children born out of wedlock shall enjoy the same rights as children born in lawful wedlock. In *Lau* v. *Kiley*, 563 F.2d 543 (2 Cir. 1977), the court held that all children born in the People's Republic of China are legitimate. The Chinese statute, unlike the Jamaican statute, abolishes all distinctions between children born in wedlock and children born out of wedlock. In *Matter of Lee*, Interim Decision 2606 (BIA 1977), we held that under the Korean Civil Code of 1960, a child born out of wedlock has coextensive rights with a child born in wedlock if that child is recognized by registration in the Korean Family Registry. We noted one exception under Korean culture in the matter of succession to "Head of Family" and determined that this exception was immaterial for immigration purposes. In various Eastern European countries, statutes were enacted after World War II for the purpose of abolishing all distinctions between children of legally married parents and those born out of wedlock. Under these statutes all children have the same rights provided paternity is established by acknowledgment or recognition. See *Matter of Kubicka*, 14 I. & N. Dec. 303 (BIA 1972); *Matter of Chojnowski*, 11 I. & N. Dec. 287 (BIA 1965); *Matter of K—*, 8 I. & N. Dec. 73 (BIA 1958) (Poland); *Matter of Jancar*, 11 I. & N. Dec. 365 (BIA 1965) (Yugoslavia); *Matter of G—*, 9 I. & N. Dec. 518 (BIA 1961) (Hungary). We conclude that the Jamaican statute is significantly different from the statutes referred to in the above-cited cases because the Jamaican statute provides for fundamental exceptions which affect the substantial rights of children born out of wedlock.

We find that the petitioner and the beneficiary were not born in wedlock. Therefore, we conclude that they cannot qualify as the legitimate children of their common natural father. Also, we find that the petitioner has not presented evidence in support of his visa petition to establish that he and the beneficiary were legitimated by the marriage of their respective natural parents as contemplated by the Legitimation Act of Jamaica. Further, we conclude that, notwithstanding the expressed purpose of the Status of Children Act, that statute does not abolish all distinctions between the legal status of a child born of legally married parents and that of a child born out of wedlock. Therefore, we take the position that compliance with the recognition provisions of the Status of Children Act cannot result in the legitimation of a child born out of wedlock. Hence, the beneficiary does not qualify as either a legitimate child under section 101(b)(1)(A) or as a legitimated child

under section 101(b)(1)(C) of the Immigration and Nationality Act. The petitioner has failed to sustain his burden of proving that the beneficiary is eligible for immigration benefits under section 203(a)(5) of the Act. Accordingly, the appeal will be dismissed.

**ORDER:** The appeal is dismissed.