**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MACARIO MORENO-MORANTE,
                    *Petitioner,*

v.

ALBERTO R. GONZALES, Attorney
General,

                    *Respondent.*

No. 05-75376

Agency No.
A97-476-013

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
May 18, 2007—San Francisco, California

Filed June 21, 2007

Before: Betty B. Fletcher, Eugene E. Siler, Jr.,* and
Michael Daly Hawkins, Circuit Judges.

Opinion by Judge Hawkins

---

*The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge
for the Sixth Circuit, sitting by designation.

## COUNSEL

Cesar Luna, Luna & Associates, San Diego, California, for the petitioner.

Bryan Beier (argued) and Luis E. Perez (briefed), Department of Justice, Office of Immigration Litigation, Washington, D.C., for the respondent.

## OPINION

HAWKINS, Circuit Judge:

We address a question of first impression: does a United States citizen grandchild, in the lawful custody of non-citizen grandparents, meet the statutory definition of "qualifying relative" for the purpose of cancellation of removal? Grandparent Macario Moreno-Morante ("Moreno") seeks review of the Board of Immigration Appeals's ("BIA") adoption and affirmance of an Immigration Judge's ("IJ") denial of his application for cancellation of removal, concluding that Moreno lacked qualifying relatives for purposes of the hardship determination and rejecting the contention that Moreno's U.S. citizen grandchildren should qualify in light of his legal guardianship, custody, and pending adoption of them. We have jurisdiction under 8 U.S.C. § 1252 and deny Moreno's petition.[1]

---

[1]The government contends Moreno did not exhaust his statutory argument—that his grandchildren meet 8 U.S.C. § 1101(b)(1)(F)(i)'s definition of "child"—before either the IJ or BIA and, accordingly, that this court lacks jurisdiction to consider this claim. Although Moreno never made this precise statutory argument in the proceedings below, he *did* raise his general argument that his grandchildren should be considered qualifying relatives for purposes of cancellation of removal.

Although Moreno's specific argument before the IJ and BIA focused on his de facto parent-child relationship with his grandchildren, this argument

**FACTS AND PROCEDURAL HISTORY**

On November 25, 2003, Moreno, a native and citizen of Mexico, was appointed the legal guardian of his five U.S. citizen minor grandchildren. Moreno alleges his grandchildren were abused physically and emotionally by their natural mother and respective natural fathers. In addition, he contends both fathers are now absent and the mother has been removed to Mexico due to the domestic violence issues involving her children. Although he did not become a guardian until November 2003, Moreno contends he and his spouse have always played a major role in raising their grandchildren, who have lived with Moreno on a permanent basis since 2002.

More than a month before Moreno was appointed guardian, the Department of Homeland Security ("DHS") issued a Notice to Appear charging Moreno with removability under section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien who was present in the United States without having been admitted or paroled. At his initial hearing on January 9, 2004, Moreno conceded removability, contesting only the alleged date of entry. Moreno also applied for cancellation of removal pursuant to 8 U.S.C. § 1229(b)(1) and, in the alternative, voluntary departure. Moreno sought and obtained a continuance so he could determine whether his court-ordered custody of his grandchildren constituted a formal adoption, possibly rendering them qualifying relatives for purposes of cancellation.

_____

"was sufficient to put the BIA on notice" that § 1101(b)(1)'s definition of "child" for cancellation of removal purposes was contested, and the agency therefore had "an opportunity to pass on this issue." *Zhang v. Ashcroft*, 388 F.3d 713, 721 (9th Cir. 2004) (per curiam). Moreno's failure to elaborate on his general contention with a specific statutory argument is therefore immaterial for jurisdiction purposes. *See Kaganovich v. Gonzales*, 470 F.3d 894, 897 (9th Cir. 2006) ("Petitioner's failure to elaborate on the argument in his brief to the BIA is immaterial to our jurisdiction.").

At a second hearing the following month, Moreno requested and was granted a second continuance to consult with DHS about the possibility of an administrative closure of the removal proceeding in light of Moreno's intent and ongoing efforts to formally adopt his grandchildren.

During the final hearing on April 8, 2004, Moreno's counsel indicated he had been unable to speak with DHS about closing the removal proceedings and indicated that Moreno's adoption of his grandchildren was still six to twelve months from completion. DHS informed the IJ that, after considering the merits of Moreno's case, it had decided not to exercise its discretion to administratively close the removal proceedings.

The IJ issued an oral decision: (1) denying Moreno's request for administrative closure because the government had opted not to exercise its discretion to close the proceedings; (2) pretermitting Moreno's application for cancellation of removal because he had no "qualifying relative" insofar as his adoption of his grandchildren was not yet complete; and (3) granting Moreno's unopposed request for voluntary departure.

Moreno appealed to the BIA, arguing his grandchildren "should be deemed qualifying relatives similar to 'children' for cancellation purposes" because "he holds permanent and undisputed legal custody and guardianship" of them. The BIA adopted and affirmed the IJ's decision regarding "[Moreno's] failure to establish a qualifying relative for cancellation of removal" and specifically rejected his request for a remand to the IJ to allow Moreno "to conclude the adoption process of his [U.S.] citizen grandchildren in order to be eligible for cancellation of removal."

## STANDARD AND SCOPE OF REVIEW

Where, as here, the BIA affirms the IJ pursuant to *Matter of Burbano*, 20 I. & N. Dec. 872 (BIA 1994), and does not

express disagreement with any part of the IJ's decision, the BIA effectively adopts the IJ's decision in its entirety. *See Abebe v. Gonzales*, 432 F.3d 1037, 1040 (9th Cir. 2005) (en banc). Unlike a streamlined summary affirmance, which signifies only that the result the IJ reached was correct and any errors were harmless or nonmaterial, a *Burbano* affirmance signifies that the BIA has conducted an independent review of the record and has determined that its conclusions are the same as those articulated by the IJ. *See id.* & 1040 n.3. In this case, because the BIA adopted the IJ's decision, and expressed no disagreement with it, we review the IJ's decision as if it were the BIA's. *Id.* at 1039-40.

We review purely legal determinations de novo. *See Montero-Martinez v. Ashcroft*, 277 F.3d 1137, 1145 (9th Cir. 2002). Although the agency's interpretation of immigration laws is entitled to deference, such deference is required only "after we determine that a statute is ambiguous." *Kankamalage v. INS*, 335 F.3d 858, 862 (9th Cir. 2003).

## DISCUSSION

**[1]** To be eligible for cancellation of removal, a non-permanent resident must establish, *inter alia*, that "removal would result in exceptional and extremely unusual hardship to the alien's *spouse, parent, or child*, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1229b(b)(1)(D) (emphasis added). Moreno does not claim to have a qualifying spouse or parent, but contends that each of his grandchildren qualifies as a "child" under the statute.

"Child," for purposes of cancellation of removal, is defined by 8 U.S.C. § 1101(b)(1). *Montero-Martinez*, 277 F.3d at 1145. Moreno first argues that his grandchildren qualify under this statute because they are orphans as defined by § 1101(b)(1)(F)(i). Alternatively, Moreno argues that his grandchildren are "de facto" children in light of his legal

guardianship and custody. Neither argument is supported by —or permissible under—the law.

## I.   "Child" Under 8 U.S.C. § 1101(b)(1)(F)(i)

Our starting point for any issue of statutory construction is the plain language of the statute. *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 252 (2004). If the language in question has an unambiguous meaning, our inquiry must cease. *Montero-Martinez*, 277 F.3d at 1141. Here, the plain language at issue is unambiguous, and Moreno's grandchildren do not satisfy its express terms.

[2] In § 1101(b)(1), Congress defines "child" for purposes of cancellation of removal as "an unmarried person under twenty-one years of age" falling within at least one of several enumerated categories, including: children born out of wedlock, certain stepchildren, legitimate children, certain adopted children (and their siblings), and certain orphans. 8 U.S.C. § 1101(b)(1)(A)-(F). Moreno contends his grandchildren qualify as orphans, as defined by § 1101(b)(1)(F)(i).

Section 1101(b)(1)(F)(i) states:[2]

> (1) The term "child" means an unmarried person under twenty-one years of age who is—
>
> . . . .
>
> (F) (i) a child, under the age of sixteen *at the time a petition is filed in his behalf to accord a classification as an immediate relative under section 201(b)* [8 U.S.C. § 1151(b)],
>
> *who is an orphan* because of the death or disappearance of, abandonment or desertion by, or separation

---

[2]Paragraph breaks and emphasis added for clarity and ease of reading.

or loss from, both parents, or for whom the sole or surviving parent is incapable of providing the proper care and *has in writing irrevocably released the child for emigration and adoption*;

*who has been adopted abroad by a United States citizen* and spouse jointly, or by an unmarried United States citizen at least twenty-five years of age, who personally saw and observed the child prior to or during the adoption proceedings; *or*

*who is coming to the United States for adoption by a United States citizen* and spouse jointly, or by an unmarried United States citizen at least twenty-five years of age, who have or has complied with the pre-adoption requirements, if any, of the child's proposed residence:

Provided, That the Attorney General is satisfied that proper care will be furnished the child if admitted to the United States: Provided further, That no natural parent or prior adoptive parent of any such child shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this Act . . . .

**[3]** Moreno contends his grandchildren must be deemed "orphans" by virtue of their abandonment by and legal separation from their natural parents. However, even accepting the alleged abandonment and legal separation as true, Moreno's grandchildren do not satisfy § 1101(b)(1)(F)(i)'s requirements. By its plain language § 1101(b)(1)(F)(i) applies only to a child for whom "a classification as an immediate relative under [8 U.S.C. § 1151(b)]" is sought. It is uncontested that no petitions for classification as an "immediate relative" under § 1151(b) have been filed on Moreno's grandchildren's behalf. Nor would such a petition be appropriate here. Moreno's grandchildren are U.S. citizens *themselves*, whereas

§ 1151(b) confers "immediate relative" status to the "children, spouses, and parents" *of* U.S. citizens.

**[4]** As is plain from the subsequent clauses in the statute, § 1101(b)(1)(F)(i)'s purpose is to confer "child" status to foreign children being adopted by U.S. citizens, permitting adoptive parents to obtain immigration visas for their foreign adoptees. *See, e.g.*, *Matter of Rodriguez*, 18 I. & N. Dec. 9, 11 (BIA 1980) (granting visa petition to child born in Peru because he qualified as an immediate relative orphan). Moreno's petition presents the precisely opposite situation: a noncitizen seeking to adopt U.S. citizen children. Simply put, § 1101(b)(1)(F)(i), by its plain unambiguous language, is wholly inapplicable to Moreno's grandchildren.[3] As such, they do not meet the definition of "child" under this subsection and, absent some other basis, Moreno lacks the requisite qualifying relative to permit cancellation of his removal.[4]

Finally, as the IJ held, that Moreno "may have an outstanding petition for adoption pending . . . does not equate with the conclusion that [he] is the parent of a United States citizen." Had Moreno completed the adoption process, his grandchildren (or at least some of his grandchildren) could have met the definition of "child" under § 1101(b)(1)(E)(i) if Moreno were able to show the children had been in his legal custody and resided with him for at least two years or had been "battered or subject to extreme cruelty by the adopting parent or

---

[3]Even if § 1101(b)(1)(F)(i) were somehow applicable to Moreno's situation (which it is not), it is beyond dispute that none of his grandchildren meet any of the statute's requirements. The grandchildren's parents have not "in writing irrevocably released the child for emigration and adoption." Neither have any of the grandchildren "been adopted abroad by a United States citizen." Nor are they "coming to the United States for adoption by a United States citizen."

[4]We recently held that a grandchild does not qualify as a "child" under § 1101(b)(1) for § 1229b(b)(1)(D) purposes in an unpublished decision. *Ayala-Hernandez v. Gonzales*, No. 05-77077, 2007 U.S. App. LEXIS 4392 at *2 (9th Cir. Feb. 23, 2007).

by a family member of the adopting parent residing in the same household." However, Moreno had not completed the adoption process at the time of his removal proceedings, and we are aware of no law permitting an IJ or the BIA to stay removal proceedings pending an adoption without the government's consent.[5]

## II. De Facto "Child"

Alternatively, Moreno argues that his grandchildren should be considered qualifying relatives for purposes of cancellation of removal by virtue of his legal custody and guardianship of them. Specifically, Moreno argues that, "[b]y applying the plain reading of the law in requiring a full adoption, the [Attorney General] seeks to rupture a de[ ]facto parent-child relationship" and that "[s]uch an absurd result goes contrary to the general intent of immigration laws in keeping families together and protecting the interests of United States citizens." Although Moreno's arguments rightly engender sympathy, they do not render the government's position unlawful or the IJ's decision erroneous.

[5] Section 1229b(1)(D) simply does not contemplate the cancellation of removal based on the hardship to be suffered by a "de facto" child. Rather, cancellation of removal is appropriate only if the detailed statutory definition of "child" is met. The Supreme Court made this point explicit more than twenty years ago with respect to § 1229b's substantially similar predecessor statute: "suspension of deportation" under former INA § 244(a)(1), 8 U.S.C. § 1254(a)(1) (1994). *See INS v. Hector*, 479 U.S. 85 (1986) (per curiam).

In *Hector*, the Supreme Court reversed a Third Circuit deci-

---

[5]At oral argument, Moreno's counsel indicated Moreno had suspended his efforts to adopt his grandchildren, not wanting to permanently terminate his daughter's parental rights in the hope that she would rehabilitate herself and regain custody.

sion granting a petition due to the BIA's failure to give "suffi-cient consideration to whether Hector's relationship with her nieces was the functional equivalent of a parent-child relation-ship" and, if so, whether her nieces would suffer the requisite hardship warranting suspension of deportation. *Id.* at 87-88. In so holding, the Third Circuit relied on *Tovar v. INS*, 612 F.2d 794 (3d Cir. 1980), an earlier case holding that the BIA must consider hardship to an alien's grandchild when their relationship resembles a parent-child relationship.

Finding "the plain language of the statute . . . compelling," the Supreme Court held that the BIA "is not required . . . to consider the hardship to a third party other than a spouse, par-ent, or child, as defined by [statute]." *Hector*, 479 U.S. at 88.[6] The Court observed that "Congress has specifically identified the relatives whose hardship is to be considered, and then set forth unusually detailed and unyielding provisions defining each class of included relatives" and further noted that "[t]he statutory definition of the term 'child' is particularly exhaus-tive." *Id.*

The Court acknowledged that, although "it could be argued that the line [with respect to who qualifies as a 'child'] should have been drawn at a different point," such "policy questions [are] entrusted exclusively to the political branches of our Government." *Id.* at 89 (internal quotations omitted). Accord-ingly, the Court concluded that, "even if Hector's relationship with her nieces closely resembles a parent-child relationship, . . . Congress, through the plain language of the statute, [has] precluded this functional approach to defining the term 'child.' " *Id.* at 90 (footnote omitted).[7]

---

[6]We reached a similar conclusion, rejecting the Third Circuit's approach several years before the Supreme Court weighed in. *See Contreras-Buenfil v. INS*, 712 F.2d 401, 403 (9th Cir. 1983) (holding that an alien's "step-son" did not qualify as a "child" because the "stepchild" status was not created by marriage, as required by the statute).

[7]In so holding, the Court examined the legislative history of the statute, noting that "Congress has shown its willingness to redefine the term

**[6]** Although *Hector* analyzed 8 U.S.C. § 1229b's predecessor statute—the now-repealed 8 U.S.C. § 1254(a)—the relevant provisions in the two statutes are virtually identical.[8] In enacting the somewhat more restrictive "cancellation of removal" requirements under § 1229b, Congress specifically noted its changes were prompted by a weakening of the "suspension of deportation" requirements through administrative decisions.[9] Congress accordingly amended the language it felt had been misapplied—changing "extreme hardship" to "exceptional and extremely unusual hardship"—but chose to leave the "spouse, parent, or child" language untouched, apparently finding no similar error in the BIA's and courts' application of these terms. Furthermore, the "unusually detailed" and "particularly exhaustive" definition of "child" applicable to the former statute that so impressed the Supreme Court, *see Hector*, 479 U.S. at 88, remains largely the same in the modified version. If anything, it is now more detailed

---

'child' on a number of occasions, but it has not included nieces in that definition or authorized [the Court] to adopt a functional definition." *Id.* (footnote omitted); *see id.* at 90 n.6. Neither has Congress expanded the definition to include grandchildren.

**8***Compare* 8 U.S.C. § 1254(a) (1990) ("deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States . . . ."), *with* 8 U.S.C. § 1229b ("removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States . . . .").

**9***See* H.R. Rep. 104-828, at 213-14 (1996) ("The managers have deliberately changed the required showing of hardship from 'extreme hardship' to 'exceptional and extremely unusual hardship' to emphasize that the alien must provide evidence of harm to his spouse, parent, or child substantially beyond that which ordinarily would be expected to result from the alien's deportation. *The 'extreme hardship' standard has been weakened by recent administrative decisions* . . . . Our immigration law and policy clearly provide that an alien parent may not derive immigration benefits through his or her child who is a United States citizen. The availability in truly exceptional cases of relief under section 240A(b)(1) must not undermine this or other fundamental immigration enforcement policies.") (emphasis added).

and comprehensive. *Compare* 8 U.S.C. § 1101(b)(1) (1990), *with* 8 U.S.C. § 1101(b)(1) (2000).

**[7]** Accordingly, *Hector*'s rationale appears equally applicable to Moreno's case and, in light of the unambiguous plain language of the statutory definition, Congress has precluded a "functional approach to defining the term 'child.' " *Hector*, 479 U.S. at 90. As a result, Moreno's de facto parent-child relationship with his grandchildren is of no import, and the IJ's decision that Moreno's grandchildren were not qualifying relatives for purposes of cancellation of removal is entitled to deference.

Though this result—separating five U.S. citizen children from their grandfather, who appears to be their only loving and stable source of care and support—may seem unduly harsh and perhaps illogical, it is the result dictated by law. Congress is of course free to correct any inequities resulting from our application of its plain statutory language, as it has done in the past.[10]

## CONCLUSION

Moreno's grandchildren thus do not meet the statutory definition of "child" for purposes of cancellation of removal. Neither do they qualify by virtue of his de facto parent-child relationship with them because Congress has specifically precluded such a functional approach to defining the term "child" for cancellation of removal purposes.

Accordingly, Moreno's Petition for Review is **DENIED**.

---

[10]*See Hector*, 479 U.S. at 90 n.7 (noting that Congress amended the INA to overrule *INS v. Phinpathy*, 464 U.S. 183 (1984), which had reached a seemingly harsh result regarding the "continuity of physical presence" requirement dictated by Congress's plain language); *see also supra* note 9 and accompanying text.